# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KENNETH MITCHELL,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 2:06-CV-540-VEH** |
| | ) |
| **BEVERLY ENTERPRISES, INC., a** | ) |
| **Corporation,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION

Before the court is a Motion to Dismiss filed by Defendant Beverly Enterprises, Inc. (doc. 21). The motion is opposed. This matter has been briefed by the parties and is now ripe for review. For the reasons and in the manner articulated herein, Defendant's Motion to Dismiss is due to be **GRANTED**.

## I.    Facts and Procedural History

Kenneth Mitchell (hereinafter "Mitchell") filed this action on March 20, 2006.[1] Mitchell is a resident of the State of Alabama. Beverly is a corporation with its principal place of business in Fort Smith, Arkansas.

Mitchell is seeking recovery, as a *qui tam* relator, on behalf of the United

---

[1] Plaintiff filed a previous action in the United States District Court, Northern District of Alabama; however, the case was dismissed without prejudice because of a tolling agreement between the parties. Pursuant to an Order of this court, Plaintiff filed an Amended Complaint in this action on August 22, 2006.

States, alleging that Beverly "has violated and continues to violate the False Claims Act, 31 U.S.C. § 3729 by defrauding the United States government through false and fraudulent charges under the Medicare program." (Am. Compl. ¶ 4). Mitchell further contends that "Beverly also has violated - and continues to violate - the Corporate Integrity Agreement (CIA) it entered into with the Office of Inspector General (OIG) of the United States Department of Health and Human Services entered into on February 3, 2000." (Am. Compl. ¶ 5). Additionally, Mitchell is seeking to recover personally against Beverly for its violation of the "whistleblower" provision of the False Claims Act, 31 U.S.C. § 3730(h). (Am. Compl. ¶ 6).

On June 9, 2006, Beverly filed the instant Motion to Dismiss, where it requested that this court dismiss the *qui tam* portions of Mitchell's Complaint for Mitchell's failure to plead with the specificity required by FED. R. CIV. P. 9(b). The court found that the Complaint was not pled within the mandates of Rule 9(b) and permitted Mitchell the opportunity to file an amended complaint that comports to the rule. Shortly after Mitchell filed the Amended Complaint,[2] Beverly filed the instant Motion to Dismiss.

---

[2] Mitchell concedes that, without the benefit of discovery, he cannot make "any more detailed allegations of the alleged fraud." (Pla. Response to Def. Motion to Dismiss, p. 2). From this concession, the court concludes that permitting Mitchell the opportunity to further amend his complaint would be a useless act.

## II.     Standard of Review[3]

A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957). In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th 2002) (citing *CJR Invs., Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367 (11th Cir. 1998)).

"[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16) (11th Cir. 2001)). Furthermore, "[a] complaint may not be dismissed because the Plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original) (citing *Robertson v. Johnston*, 376 F.2d 43) (5th Cir. 1967)). "The threshold of sufficiency that a complaint must meet to survive a Motion to

---

[3]The parties have submitted evidence with the papers associated with the instant motion. Consistent with FED. R. CIV. P. 12(b), this court excludes and will not consider the parties' evidentiary submissions. The court will rule on the motion at bar based on the pleadings alone.

Dismiss for failure to state a claim is ... 'exceedingly low.'" *Ancata v. Prison Health Serv., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985) (quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.,* 711 F.2d 989, 995 (11th Cir. 1983)).

## III. Discussion

Beverly contends that the *qui tam* portions of Mitchell's Amended Complaint, specifically Count I and Count II, have not been pled with particularity as required by FED. R. CIV. P. 9(b) and should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

The *qui tam* portions of Mitchell's Amended Complaint can be reduced to three distinct allegations: (1) based on Mitchell's personal experiences, Beverly's therapists manipulated the Resource Utilization Grouping ("RUG") scores so that Beverly would receive more money for less work; (2) Peggy Gunter, a speech therapist employed by Beverly, billed for services that she allegedly possibly never rendered; and (3) Beverly violated the terms of the Corporate Integrity Agreement ("CIA"). As Mitchell's Amended Complaint does not, with the reliability required in the Eleventh Circuit, assert that Beverly actually submitted false claims to Medicare, the court need not otherwise delve into the specifics of Mitchell's allegations.

The Supreme Court and the Eleventh Circuit have consistently recognized the

False Claims Act as an anti-fraud statute.  *See, e.g., Vermont Agency of Natural Ress. v. U.S. ex rel. Stevens*, 529 U.S. 765, 781-82 (2000); *Clausen v. Lab Corp. of America*, 290 F.3d 1301, 1309 (11th Cir. 2001).  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  FED. R. CIV. P. 9(b).

In evaluating a Complaint for sufficient particularity, the Eleventh Circuit has noted that

> Rule 9(b) must not be read to abrogate [R]ule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of [R]ule 9(b) with the broader policy of notice pleading.

*Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985) (citation omitted).  The Eleventh Circuit has also stated that Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government."  *Clausen*, 290 F.3d at 1311.  The complaint must provide "some indicia of reliability . . . to support the allegation of an actual false claim for payment being made to the Government."  *Id.*  Moreover, "[t]o state a claim under the False Claims Act with particularity, the complaint must allege 'facts as to time, place, and

substance of the defendant's alleged fraud,' [and] 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Id.* at 1310 (quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.,* 19 F.3d 562, 567-68 (11th Cir.1994)).

In *Corsello v. Lincare, Inc.*, the Eleventh Circuit upheld a district court's order granting a motion to dismiss for failure "to allege when, where, and what violations of the False Claims Act occurred." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005) (per curiam). In his amended *qui tam* complaint, Corsello alleged that the defendants "violated the False Claims Act by submitting false Medicare claims and conspiring to defraud the government." *Id.* at 1011. Although Corsello provided details of improper practices, he failed to allege the "'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." *Id.* at 1014. *See also Walker v. R&F Props. of Lake County*, 433 F.3d 1349, 1351 (11th Cir. 2005) (wherein the Eleventh Circuit affirmed the district court's order denying a defendant's motion to dismiss, because the relator provided sufficient particularity by alleging that her services, as a nurse practitioner, were only billed as "incident to the service of a physician" even when physicians were not on the premises in addition to details of a conversation with an office administrator confirming defendant's practice of billing all services rendered by nurse practitioners and physician assistants as

"incident to the service of a physician").

Recently, in *U.S. ex el. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006), the Eleventh Circuit again addressed a relator's responsibilities under Rule 9(b). Particularly, the court reiterated that "Rule 9(b)'s directive that the circumstances constituting fraud or mistake shall be stated with particularity does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Atkins*, 470 F.3d at 1357 (citing *Clausen*, 290 F.3d at 1311). It is clearly established that a *qui tam* plaintiff must plead that a defendant "*actually submitted* reimbursement claims for the services he describes." *Id.* at 1359. It is insufficient for a plaintiff to "describe in detail what he believes is an elaborate scheme for defrauding the government by submitting false claims ... [through citing] particular patients, dates and corresponding medical records for services that he contends were not eligible for government reimbursement." *Id*.

The Eleventh Circuit evaluates "whether the allegations of a complaint contain sufficient indicia of reliability to satisfy Rule 9(b) on a case-by-case basis." *Atkins*, 470 F.3d at 1358. In *Clausen*, the 11th Circuit held that a competitor of a company that specialized in providing medical testing services to long-term care facilities did

not plead his False Claims Act claim against the company with sufficient Rule 9(b) particularity to withstand a motion to dismiss. *Clausen*, 290 F.3d at 1302-03. The complaint "allege[d] that [the company] engaged in a multi-faceted, decade-long campaign to defraud the Government as a result of its testing services." *Id*. at 1303. Specifically, the complaint claimed that the defendant "performed unauthorized, unnecessary or excessive medical tests ... and knowingly submitted bills for [that] work to ... the Government." *Id*. The relator named six schemes in which he averred that the defendant had engaged. *Id*. His complaint went into such detail as to identify specific long-term care facilities, patients, dates of testing, and testing procedures. *Id*. at 1315.

Although the relator in *Clausen* stated with particularity the circumstances comprising the elements of the alleged scheme to defraud, his complaint "failed to meet the minimum pleading requirements for the actual presentment of any false claims." *Id*. at 1315 (emphasis added). "No amounts of charges were identified. No actual dates were alleged. No policies about billing or even second-hand information about billing practices were described, ... [and not one] copy of a single bill or payment was provided." *Id*. at 1312. The Eleventh Circuit held that although Rule 9(b) "does not mandate all of [that] information for [each] alleged claim[,] ... some of [the] information for at least some of the claims must be pleaded in order to satisfy

Rule 9(b)." *Id*. at 1312 n. 21; *Corsello*, 428 F.3d at 1013 (holding that "[b]ecause it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances").

On the other hand, in *Hill v. Morehouse Med. Assoc., Inc.*, 2003 WL 22019936 (11th Cir. Aug.15, 2003) (unpublished),[4] an Eleventh Circuit panel held that a former billing and coding employee of a medical care provider satisfied Rule 9(b) where her complaint claimed that she had firsthand knowledge that her employer submitted false claims. *Id*. at *5. Unlike the relator in *Clausen*, however, the *Hill* relator worked for seven months "in the very department where she alleged the fraudulent billing schemes occurred." *Hill*, at *4.

> [S]he ha[d] firsthand information about the [defendant's] internal billing practices and the manner in which the fraudulent billing schemes were implemented. Moreover, she alleged that she observed [the defendant's] billers, coders, and physicians alter various CPT[5] and diagnosis codes over the course of [her] seven months and thus submit false claims for reimbursement to the government. Most important, unlike the plaintiff in [*Clausen*], [the *Hill* plaintiff] was privy to [the defendant's] files, computer systems, and internal billing practices because she worked in [the defendant's] billing and coding department for seven months.

---

[4]In *Atkins*, the Eleventh Circuit noted that, as an unpublished opinion, *Hill* is not binding precedent. *See* 470 F.3d at 1358 n.15. Further, the court stated that, "Even if *Hill* were a published opinion, the prior panel rule would dictate that *Clausen* supercedes *Hill* to the extent that *Hill* is inconsistent with *Clausen*." *Id*.

[5]"CPT" stands for "current procedural terminology." *Hill,* at *1.

9

*Hill*, at *4.

*Atkins* distinguishes *Hill* in that the *Atkins* plaintiff "is a psychiatrist responsible for the provision of medical care, not a billing and coding administrator responsible for filing and submitting the defendants' claims for reimbursement." 470 F.3d at 1359. "He rotated through a single facility where he heard rumors from staff and observed records of what he believed to be the shoddy medical and business practices of two other psychiatrists. He then brought suit against those two psychiatrists, their company, and the [skilled nursing facilities] where, he alleges, those two psychiatrists had provided psychiatric care over a three-year period."[6] *Id*.

The *Atkins* court found that, "[a]s the plaintiff did in *Clausen*, Atkins has described in detail what he believes is an elaborate scheme for defrauding the government by submitting false claims." *Id*. The *Atkins* plaintiff cited "particular patients, dates and corresponding medical records for services that he contends were

---

[6]The *Atkins* court noted:

> The *Hill* relator, by contrast, personally observed the behavior of which she complained during the seven months she spent in her employer's billing and coding department, and then brought her action against her employer. Atkins's complaint not only fails to contain an indicia of reliability approaching the level of reliability found in the *Hill* allegations, it sweeps with a much broader brush by naming as defendants [skilled nursing facilities] into which Atkins never stepped foot. Faced with these pleading deficiencies, we would be hard pressed to say that Atkins's complaint satisfies the particularity requirement of Rule 9(b).

*Atkins*, 470 F.3d at 1359.

not eligible for government reimbursement." *Id.* Like the *Clausen* plaintiff, Atkins did not "provide the next link in the FCA liability chain: showing that the defendants *actually submitted* reimbursement claims for the services he describes." *Id*. Rather, "he portray[ed] the scheme and then summarily conclude[d] that the defendants submitted false claims to the government for reimbursement." *Id*.

The case at bar presents a textbook example of a complaint that fails Rule 9(b) for want of sufficient indicia of reliability to support the assertion that Beverly actually submitted false claims to the government.

### A.     Services Performed by Mitchell

In December 2000, Mitchell was hired as an occupational therapist for Career Staff Unlimited, a contractor that provides therapy services to some Beverly facilities. (Am. Compl., ¶ 21). Mitchell worked in an Oxford, Alabama, "facility" owned by Beverly Healthcare, a subsidiary of Defendant Beverly Enterprises, Inc. (*Id*.). In October 2001, Mitchell became a full-time employee of AEGIS Therapies, a Beverly subsidiary. (Am. Compl., ¶ 22).

In essence, the basis for Mitchell's *qui tam* False Claims Act claims, based on Mitchell's personal experiences, is rooted in the averment that:

> Beverly sought to maximize their Medicare reimbursement by keeping the minutes that Beverly therapists spent with patients at the lowest possible level that ensured Medicare would reimburse Beverly at a

11

certain dollar amount. As Beverly officials expressed internally, they wanted to keep therapists from "over delivering" therapy minutes that fell somewhere above the minimum level possible for reimbursement, but below the minimum level to ensure a higher level of reimbursement. For Beverly, there was no middle ground of medical necessity, there was only the low end of a RUG level – the number that they used to bill Medicare.

(Am. Compl., ¶ 14).

Like the plaintiffs in *Clausen* and *Atkins*, Mitchell describes in detail what he believes is a systemic and elaborate scheme for defrauding the Government. He alleges that he was required by Beverly to manipulate the RUG levels and that such manipulation constitutes a false claim to the Government. Like the plaintiff in *Clausen*, Mitchell does not cite to particular patients, approximate dates, or corresponding treatment records for services Mitchell provided to Beverly's patients.[7] Finally, like the plaintiff in *Atkins*, Mitchell worked at only a single Beverly facility; yet, Mitchell blanketly alleges that the false claims in this case are universal to all Beverly facilities.

Mitchell professes to have firsthand knowledge of Beverly's submission of claims to Medicare for therapy that Mitchell provided to Beverly's patients.

---

[7]Mitchell states that he submitted and that he witnessed other Beverly employees submit logs and bills *to Beverly* for services rendered to patients. At no point in the Amended Complaint does Mitchell purport that he has any basis for believing that any of these logs or bills were presented to Medicare by Beverly.

However, this assertion lacks the reliability required by Rule 9 and Eleventh Circuit case law. Unlike the relator in *Hill*, Mitchell does not allege that he was responsible for submitting bills to Medicare or that he actually submitted bills to Medicare on Beverly's behalf. Rather, Mitchell asserts that he was required to keep "logs" of his time spent providing therapy to patients. (Am. Compl., ¶ 27). Mitchell gave those "logs" to Beverly's district manager. (*Id.*). Mitchell then concludes that Medicare must have been billed for the therapy time as entered in the logs. (*Id.*). As an occupational therapist at a single Beverly facility, Mitchell is more closely akin to the plaintiff in *Atkins*, a psychiatrist at a single skilled nursing facility who alleged a systemic scheme of fraud, than to the plaintiff in *Hill*, a billing specialist responsible for submitting claims to the Government. Mitchell's conclusion, that Beverly must have submitted false claims to Medicare, simply does not pass muster in light of *Hill*, *Clausen*, or *Atkins*. As such, Mitchell cannot sustain a claim under the False Claims Act for services that he performed while employed by Beverly in that he has failed to allege, with the required indicia of reliability, that Beverly submitted any claims to the Government for services that Mitchell provided to Beverly's patients.

  **B. Services performed by Peggy Gunter**

  According to Mitchell, Peggy Gunter is a speech therapist employed by

Beverly at a facility in Oneonta, Alabama. (Am. Compl., ¶ 42).[8] Mitchell alleges that, from October 2001-December 2001, he "witnessed" Ms. Gunter "submit fraudulent records that contained bills that inflated the amount of service Gunter provided to patients – if the [sic] ever provided service at all." (*Id*.).

Mitchell also alleges that, on February 21, 2002, family members of Esther Hollingsworth complained to Mitchell and others that Ms. Hollingsworth was not receiving "adequate speech therapy" by Ms. Gunter. (Am. Compl., ¶ 46). Mitchell states that Ms. Hollingsworth's family asserted that Ms. Hollingsworth had only one session of speech therapy with Ms. Gunter between February 7, 2002, and February 21, 2002. (*Id.*). Mitchell avers that "bills were submitted by Gunter that showed 730 minutes of speech therapy" delivered to Ms. Hollingsworth for that same time period. (*Id*.). Mitchell states that "at least 120 minutes worth of bills" were falsified by Ms. Gunter. (*Id*.). Mitchell alleges that the Hollingsworth story is "anecdotal" and is evidence that Ms. Gunter always behaves in a fraudulent manner in delivering and in reporting speech therapy for Beverly's patients. (*Id*.).

Mitchell's allegations with regard to Ms. Gunter fail in several key regards; however, only one is of concern to this court at this time. Mitchell's allegation that

---

[8]The court notes that, according to the Amended Complaint, Mitchell was at all times employed by Beverly at the Oxford, Alabama facility. At no point does Mitchell assert that he performed therapy services at facilities other than at the facility located in Oxford, Alabama.

Ms. Gunter submitted fraudulent bills to an unidentified entity for speech therapy is in no way tantamount to an allegation that Beverly submitted false claims to Medicare. This court will not make such a leap. In *Atkins*, the Eleventh Circuit makes it unimpeachably clear that a *qui tam* plaintiff must allege that a defendant actually submitted false claims to the Government in order to maintain a *qui tam* action under the False Claims Act. *See Atkins*, 470 F.3d at 1358-1359. The *Atkins* court noted, "[t]he whistle must be blown not only loudly, but with Rule 9(b) particularity *in the complaint* before the courts will listen." *Id.* at 1358 (quoting *United States ex rel. Atkins v. McInteer,* 2004 WL 3998029 (N.D. Ala. 2004)) (emphasis in original). Nothing within the four corners of Mitchell's Amended Complaint constitutes a concrete allegation that Beverly submitted Ms. Gunter's allegedly fraudulent bills to Medicare; thus, Mitchell cannot proceed on a False Claims Act claim under his allegations with regard to Ms. Gunter.[9]

###   C.   Beverly's Alleged Violations of the CIA

---

[9]In Mitchell's papers concerning the instant Motion to Dismiss, Mitchell states that he did, in fact, allege that Beverly submitted Ms. Gunter's bills to Medicare. While the court does not find support for Mitchell's position on this issue within the Amended Complaint, the court notes that, if Mitchell had averred that Beverly submitted these allegedly false claims to Medicare, those allegations would not be made with the requisite indicia of reliability required by *Atkins* and *Clausen*. As discussed *supra*, Mitchell was not employed by Beverly in a capacity that required him to submit bills to Medicare. Rather, Mitchell was employed as an occupational therapist at a different Beverly facility than the facility in which Ms. Gunter was employed. An employee in Mitchell's position is distinct from the *Hill* relator, and his allegations do not carry the necessary weight of credibility in light of *Atkins* and *Clausen*.

Mitchell, citing to non-binding case law, contends that this court must allow Mitchell's *qui tam* claims to progress beyond this point in that Beverly has violated certain aspects of the CIA and that such violations constitute a per se violation of the False Claims Act. This argument requires very little discussion.

The *Atkins* court, quoting *Clausen*, specifically stated that, "In the healthcare context such as the one before us, the False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." *Atkins*, 470 F.3d at 1357 (internal marks and citations omitted). Because Mitchell has failed to sufficiently allege that Beverly submitted any bills to Medicare, much less bills that constitute a false claim under the False Claims Act, Mitchell cannot maintain the *qui tam* claims asserted in the Amended Complaint on the basis that Beverly is allegedly not in compliance with the CIA.

### IV. Conclusion

As Mitchell has not alleged that Beverly submitted any bills to Medicare that constitute a false claim pursuant to the False Claims Act, Beverly's Motion to Dismiss is due to be **GRANTED**. The *qui tam* claims in the Amended Complaint are due to be **DISMISSED WITH PREJUDICE**.

Beverly did not ask for dismissal of Count III of the Amended Complaint, Mitchell's "whistleblower" claim under the False Claims Act; thus, the court has not considered the merits of that claim.

A separate Order will be entered consistent with this Memorandum Opinion.

**DONE** this the 19th day of March, 2007.

                                                       **VIRGINIA EMERSON HOPKINS**
                                                       United States District Judge